UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT PATNAUDE, <br><br> Plaintiff, <br><br><br> vs. <br><br> SOUTH DAKOTA DEPARTMENT OF CORRECTIONS, official capacity; KELLIE WASKO, Secretary of Corrections, individual and official capacity; and ALEJANDRO REYES, Warden, Mike Durfee, individual and official capacity, <br><br> Defendants. | 4:25-CV-04090-CCT <br><br><br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUERIS AND 1915A SCREENING** |

Plaintiff, Robert Patnaude, an inmate at Mike Durfee State Prison (MDSP), file a pro se lawsuit under 42 U.S.C. § 1983. Docket 1. Patnaude moves for leave to proceed in forma pauperis and provided his prisoner trust account report. Dockets 3, 4.

## I.      Motion for Leave to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act, a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Therefore, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an

installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)). The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Patnaude's certified prisoner trust account report shows an average monthly deposit of $0.00, a negative average monthly balance, and a negative current balance. Docket 4 at 1. Based on this information, the Court grants Patnaude's motion for leave to proceed in forma pauperis, Docket 3, and waives his initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

To pay his filing fee, Patnaude must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Patnaude's institution. Patnaude remains responsible for the entire $350 filing fee as long as he is a prisoner. *See In re Tyler,* 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    1915A Screening

### A.    Factual Background Alleged by Patnaude

Patnaude has been in the custody of the South Dakota Department of Corrections (SDDOC) since January 14, 2019. Docket 2 ¶ 1. Patnaude avers that that "he is a disabled American Veteran and has been declared disabled for over 20 years, pursuant to the A.D.A. and 42 U.S.C. § 12102." *Id.* ¶ 2. Patnaude alleges that defendants have violated the Americans with Disabilities Act as well as his Eighth Amendment right to be free from cruel and unusual punishment. Docket 1 at 2, 3, 5, 6. He also seeks to enforce a settlement agreement between the United States of America and the SDDOC under the Americans with Disabilities Act, DJ # 204-69-56. *Id.*; Docket 2 ¶¶ 5–8. Patnaude provided a copy of the settlement agreement he seeks to enforce as an exhibit to the affidavit in support of his complaint. Docket 2-1.

> South Dakota law provides that the Department of Corrections
>
> may grant an inmate up to ninety days of earned discharge credits for each program completion; up to ninety days of earned discharge credits upon completion of three hundred sixty hours of satisfactory work not to exceed one hundred eighty days of earned discharge credit for work in a twelve-month period; and up to three hundred sixty-five days of earned discharge credits for heroic acts in life threatening situations, through significant efforts in disaster

3

> response or by providing exceptional assistance in maintaining the safety and security of a prison.

SDCL § 24-15A-50.1. *See also* Docket 2 ¶ 3. Patnaude contends that he cannot work because he is disabled. Docket 1 at 6.

Patnaude submitted an informal resolution request on April 25, 2025, asking why he does not get Earned Discharge Credits [EDCs] pursuant to SDCL § 24-15A-50.1 and stated that he is "disabled pursuant to the A.D.A." and "not able to work." Docket 1-1 at 5. Patnaude stated that he "should be getting EDC's from back when [he] came in[,]" and requested that the SDDOC recalculate his sentence by applying the maximum allowable EDCs of 180 days per year. *Id.* In response to his informal resolution request, Patnaude was informed that his "request for ADA EDCs was denied in 2022." *Id.* at 4. An inmate does not automatically get EDCs just because the inmate has a disability; only inmates who are unable to work at any job are approved for EDCs. *Id.* According to the response, Patnaude's only work restriction is no stairs. *Id.*

Not satisfied with the response to his informal resolution request, Patnaude submitted a request for administrative remedy contending that requiring him to work to receive EDCs violates the settlement agreement (DJ # 204-69-56) as well as 28 C.F.R. §§ 35.149 and 35.150. *Id.* at 3. Patnaude renewed his request for at least 180 days of EDCs for each year that he has been incarcerated. *Id.* After Patnaude submitted his request for administrative remedy, medical was contacted and reviewed Patnaude's records. *Id.* at 2.

Medical confirmed that Patnaude's only work restriction is "no stairs" and that Patnaude is able to work within his restrictions. *Id.* In response to Patnaude's request for administrative remedy, Warden Reyes stated:

> The ADA does not require the DOC to provide credits for work or programming automatically to any offender who is disabled. The ADA provides requirements to ensure those who are disabled have the same access to work and programming. As such, if medical has not granted a no work order, then once a job is assigned the DOC will work with you to provide necessary accommodations to meet your restrictions.

*Id.*

Patnaude contends that defendants refuse to give him the medication that he needs for his pain, telling him that he needs to purchase it from the commissary. Docket 1 at 5; Docket 2 ¶ 9. Because he is indigent and cannot work, Patnaude cannot purchase necessary pain medication from the commissary. Docket 1 at 5. Additionally, according to Patnaude, an inmate is permitted to purchase from the commissary only one bottle of either Ibuprofen or Tylenol each month, but that amount is less than the amount Patnaude's doctor has prescribed for him. *Id.*

Patnaude challenges the SDDOC's grievance procedure. *Id.* at 3; Docket 2 ¶ 8. He contends that the grievance procedure is "not in accordance with the law, [a]s they have a[n] A.D.A. Coordinator who look[s] for any and all reason to reject any complaint." Docket 1 at 3 (citing 28 C.F.R. § 35.107). According to Patnaude, the A.D.A. coordinator must "resolve inmate ADA complaints[.]" *Id.* He has "attempted to find remedy for various issues under the ADA, and the

coordinator rejects them instead of finding resolution pursuant to [28 C.F.R. §] 35.107(b)." *Id.*

Patnaude sues the SDDOC; Kellie Wasko, Secretary of the Department of Corrections in her individual and official capacities;[1] and Alejandro[2] Reyes, the Warden at Mike Durfee State Prison, in his individual and official capacities. Docket 1 at 2. In his request for relief, Patnaude requests that the Court order defendants to "comply with the A.D.A. and the Settlement Agreement and award [him] and all other disabled inmates[3] . . . early discharge credits[.]" *Id.* at 7. Patnaude requests the "maximum number of days allowed under the current program, per year." *Id.* Patnaude wants defendants "to find a policy that ensures all inmates the needed medication they are prescribed by a provider, without buying it off commissary." *Id.* Finally, Patnaude seeks an order directing defendants "to comply with the ADA and [to] implement a policy that will find an equitable resolution to all ADA complaints and not be allowed to reject any complaint." *Id.*

---

[1] Wasko is no longer the Secretary of Corrections. In accordance with Federal Rule of Civil Procedure 25(d), Nick Lamb, Wasko's successor as the Secretary of Corrections, is substituted for Wasko on the official capacity claims.
[2] Patnaude's complaint uses different spellings of this defendant's first name. Docket 1 at 1, 2. This Court will use "Alejandro," which is the correct spelling.
[3] As pro se litigant, Patnaude may not bring claims on behalf of others. *Ward v. U.S. Marshals*, No. 5:23-CV-05061-CCT, 2025 WL 949242, at *15 (D.S.D. Mar. 28, 2025) ("Under 28 U.S.C. § 1654, a pro se plaintiff may plead their own cases in federal court, but a pro se plaintiff cannot bring claims on behalf of others."); *Weigel v. City of Flandreau*, No. 4:23-CV-04184-ECS, 2025 WL 487153, at *2 (D.S.D. Feb. 13, 2025) ("Only a licensed attorney can represent the interests of another person.") (collecting cases, including *Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005)).

### B.    Legal Standard

The court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" *Twombly*, 550 U.S. at 555 (citations omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under

some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Patnaude's claims under 28 U.S.C. § 1915A.

### C.   Legal Analysis

#### 1.   Alleged Violation of the Settlement Agreement

Patnaude fails to state a claim upon which relief can be granted arising out of the alleged violation of the settlement agreement between the United States Department of Justice and the SDDOC for two independent reasons. First, the settlement agreement expired years before Patnaude commenced this action. The settlement agreement provides that "[t]his Agreement shall remain in effect for three (3) years from the effective date of the Agreement." Docket 2-1 at 12, § IX.A. The effective date of the settlement agreement is October 23, 2018, the date of the last signature agreeing and consenting to the settlement agreement. *Id.* at 3 (§ III.F), 14–15. But even if the settlement agreement had remained in effect, the plain terms preclude Patnaude from commencing a civil action seeking to enforce the agreement. Paragraph L of § IX of the settlement agreement provides:

> No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action or proceeding. Accordingly, no person or entity may assert any claim or right as a beneficiary or protected class member under this Agreement. This Agreement is not intended to expand the right of any person or entity who seeks relief against

> MDSP, SDSP, or the South Dakota DOC, its officials or employees. This Agreement may not be used as evidence of liability in any proceeding.

*Id.* at 14. When the settlement agreement was in effect, the right to commence a civil action to enforce the agreement and to seek remedies for the violations belonged only to the United States. *Id.* at 13, § IX.I. Patnaude's claims seeking to enforce the settlement agreement between the United States Department of Justice and the SDDOC are dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.   ADA Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Under the ADA, a "public entity" includes state and local governments, as well as their agencies and instrumentalities. *Id.* § 12131(1)(A), (B). "[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates[.]" *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998). But because Title II of the ADA provides redress for discrimination by a "public entity," individuals in their personal capacities are not subject to suit under Title II. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010) (per curiam) (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc)). Thus, Patnaude's claims against Wasko and Reyes in their individual capacities for

9

violating the ADA are dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### a.    Waiver of Eleventh Amendment Immunity

Before considering whether Patnaude has plausibly alleged an ADA claim against the SDDOC and Wasko and Reyes in their official capacities, the Court must consider whether the Eleventh Amendment bars Patnaude's claims. It is well established that official capacity claims against state officials are considered to be claims against the officials' employer, which here is the state of South Dakota. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official is his or her official capacity is not a suit against the official but rather is a suit against the official's office." (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). The Eleventh Amendment precludes Patnaude from suing the state of South Dakota or its agencies, including the SDDOC,[4] in federal court. *Arlt v. Mo. Dep't of Corrs.*, 229 F. Supp. 2d 938, 942 (E.D. Mo. 2002). But Congress may abrogate a state's Eleventh Amendment immunity if Congress intends it unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Id.* (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). In *Yeskey*, the Supreme Court held that Congress intended Title II of the ADA to apply to state prisons, but expressly declined to consider whether by doing so Congress was acting pursuant to a valid grant of its legislative power. *Yeskey*, 524 U.S. at 211–13.

---

[4] The SDDOC was created by the state legislature. *See* SDCL § 1-15.1.2.

The Eighth Circuit has held that Title II of the ADA is "beyond Congress' power under the Fourteenth Amendment's enforcement clause." *Arlt*, 229 F. Supp. 2d at 942 (citing *Alsbrook*, 184 F.3d at 1007). Because the enactment of Title II of the ADA did not validly abrogate a state's Eleventh Amendment immunity, a district court does not have subject matter jurisdiction over a Title II ADA claim seeking injunctive relief against a state agency and state employees sued in their official capacities. *Id.* Patnaude's ADA claim against the SDDOC is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

However, the Eighth Circuit has held that a state prisoner can bring an ADA *Ex Parte Young* claim for prospective injunctive relief against state prison officials sued in their official capacities and that *Alsbrook* does not bar such a claim. *Id.* (citing *Randolph v. Rodgers*, 253 F.3d 342, 347–48 (8th Cir. 2001)). Thus, the Court must consider whether Patnaude has plausibly alleged a Title II ADA claim for prospective injunctive relief against Lamb and Reyes in their official capacities. As the Court understands Patnaude's complaint, he alleges three[5] claims: denial of EDCs, failing to provide pain medication at no cost, and failing to have an appropriate ADA grievance procedure. Docket 1 at 3, 5, 6.

---

[5] In his complaint, Patnaude alleges that he cannot keep his dentures clean because he is not able to order cleaning supplies and that defendants do not follow medical restrictions including a medical bed, handicapped facility, and no stairs. Docket 1 at 5. But the relief Patnaude seeks will not redress these claims. *Id.* at 7. Because Patnaude does not seek any relief to redress these allegations, any claims arising out of these allegations are dismissed without prejudice for failure to state a claim upon which relief can be granted.

11

### b.      Earned Discharge Credits

In Count I of his complaint, Patnaude alleges that he has been denied EDCs because he is "disabled" and requests that the Court order defendants to award him the maximum number of EDCs allowed under "the current program, per year." Docket 1 at 6, 7. Before considering whether Patnaude has stated an ADA claim for denial of EDCs, this Court must determine whether it has subject-matter jurisdiction over this claim. In *Preiser v. Rodriquez*, 411 U.S. 475 (1973), the Supreme Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500. In this case, Patnaude's claim seeking injunctive relief in the form of earned discharge credits, which Patnaude contends he was not provided due to his disability in violation of Title II of the ADA, is a request for a speedier release. *See* Docket 1 at 6 ("I am being incarcerated for an extended period of time due to my disability and being unable to work to earn early release credits."). Thus, his sole federal remedy is a writ of habeas corpus.

In *Minter v. Bartruff*, 939 F.3d 925 (8th Cir. 2019), the Eighth Circuit considered claims by sexual offender inmates that they were excluded from a sexual offender treatment program that would have permitted them to accrue earned-time credits that would shorten their term of imprisonment. The plaintiffs argued that their exclusion from the program deprived them of their Fourteenth Amendment procedural and substantive due process liberty rights

12

and to equal protection of the law. *Id.* at 926. In their § 1983 complaint, they sought actual and punitive damages, attorneys' fees, and entry of on order mandating recalculation of earned-time credits. *Id.* at 927. The Eighth Circuit explained that "[g]ood-time (or earned-time) credits usually shorten an inmate's sentence. Therefore, when an inmate alleges unlawful deprivation of good-time credits, the relief he seeks is immediate or speedier release from imprisonment and 'his sole federal remedy is a writ of habeas corpus.'" *Id.* at 928 (quoting *Preiser*, 411 U.S. at 500). Because the plaintiffs were seeking restoration of earned-time credits, the Eighth Circuit held that habeas corpus was the exclusive federal remedy for this claim. *Id.* at 929. *See also Wolff v. McDonnell*, 418 U.S. 539, 554–55 (1974) (stating that *Preiser* forecloses a § 1983 action seeking injunctive relief restoring good-time credits); *Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002) (holding that the district court properly dismissed a § 1983 claim seeking restoration of good time credit as barred by *Preiser*); *Bogovich v. Sandoval*, 189 F.3d 999, 1004 (9th Cir. 1999) ("If an ADA claim challenges the validity or duration of confinement, the prisoner's sole federal remedy is the writ of habeas corpus."); *Kogut v. Ashe*, 592 F. Supp. 2d 204, 206 (D. Mass. 2008) (recognizing that an inmate's claim that he was barred from work programs that may have the effect of reducing his sentence due to disability discrimination in violation of Title II of the ADA is sufficient to state a colorable claim for habeas relief). Because *Preiser* bars Patnaude's claim seeking injunctive relief arising out of the alleged failure to award EDCs, Patnaude's claim is dismissed without prejudice under 28 U.S.C.

13

§§ 1915€(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

### c.    Pain Medication at No Cost

To prevail on a claim under Title II of the ADA, Patnaude must establish that "1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). A person is disabled under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1)(A). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. . . . [N]ot every impairment will constitute a disability[.]" 29 C.F.R. § 1630.2(j)(1)(ii). Here, Patnaude alleges that he is "disabled," but he does not allege any facts to establish that he has a physical or mental impairment that substantially limits one or more major life activities. Thus, he has not plausibly alleged facts to establish the essential elements of an ADA claim. *See Wraggs v. City of Bellevue*, No. 8:25CV676, 2026 WL 905754, at *5 (D. Neb. Apr. 2, 2026) (dismissing an inmate's Title II ADA claim for failing to state a claim because the inmate did not allege any facts regarding how his claimed physical impairment impacted his ability to perform basic life activities). Thus, Patnaude's ADA claim for injunctive relief against Lamb and Reyes in their official capacities arising out of the alleged failure to provide pain medication at

no cost to disabled inmates is dismissed without prejudice under 28 U.S.C. §§ 1915€(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

### d.     ADA Grievance Process

In Count III of his complaint, Patnaude alleges that defendants refuse to comply with 28 C.F.R. § 35.107(b) and requests that the Court order defendants to comply with the ADA and "implement a policy that will find an equitable resolution to all ADA complaints and not be allowed to reject any complaint." Docket 1 at 3, 7. The regulation Patnaude seeks to enforce provides that "[a] public entity that employs 50 or more persons shall adopt and publish grievance procedures providing for prompt and equitable resolution of complaints alleging any action that would be prohibited by this part." 28 C.F.R. § 35.107(b). But there is no private right of action to enforce the ADA grievance procedure outlined in 28 C.F.R. § 35.107(b). *Kirola v. City & Cnty. of San Franciso*, 74 F. Supp. 3d 1187, 1259–60 (N.D. Cal. 2014) (collecting cases), *aff'd in part, rev'd in part on other grounds*, 860 F.3d 1164 (9th Cir. 2017); *see also Jones v. City of Detroit*, No. 17-11744, 2023 WL 1819141, at *2 (E.D. Mich. Feb. 8, 2023) ("Section 35.107(b) is not enforceable in a private cause of action because failing to provide an ADA grievance procedure does not itself deny the disabled meaningful access to public services."); *Wells ex rel. Glover v. Creighton Prepatory Sch.*, 82 F.4th 586, 593–94 (8th Cir. 2023) (holding that there is no private right of action to enforce the grievance-procedure requirement set forth in a regulation promulgated under Title IX). Patnaude's

15

claim arising out of the alleged violation of 28 C.F.R. § 35.107(b) is dismissed with prejudice under 28 U.S.C. §§ 1915€(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

### 3.    Eighth Amendment Claim

Liberally construing Patnaude's complaint, he alleges an Eighth Amendment claim for deliberate indifference to a serious medical need because he is indigent and cannot afford to purchase pain medication from the commissary. Docket 1 at 5.

### a.    SDDOC

Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution[.]" 42 U.S.C. § 1983. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. *Cory v. White*, 457 U.S. 85, 90-91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines the powers and characteristics of the entity that was created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985) (citing *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)).

According to South Dakota law, the SDDOC was created by the state legislature. *See* SDCL § 1-15.1.2. Although Patnaude seeks only injunctive

relief and not money damages, the SDDOC is an arm of the State of South Dakota and, as such, is not subject to suit in federal court under § 1983. Patnaude's § 1983 claim against the SDDOC is dismissed with prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b.    Individual Capacity Claims

"Section 1983 plaintiffs may sue individual-defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991)). Patnaude does not seek money damages; he seeks only injunctive relief. Docket 1 at 7. Thus, Patnaude's § 1983 claim against Wasko and Reyes in their individual capacities for injunctive relief is dismissed with prejudice for failure to state a claim upon which relief can be granted.

### c.    Official Capacity Claims for Injunctive Relief

"[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983" and amenable to suit. *Will*, 491 U.S. at 71 n.10. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). However, a plaintiff's "official capacity claim for injunctive relief need only allege that each defendant, by virtue of his [or her] office, has some connection with the unconstitutional conduct for which [the plaintiff] seeks injunctive relief." *Warfield v. Hettich*, 4:24-CV-04049-ECS, 2025 WL 957769, at *9 (D.S.D. Mar. 31, 2025) (internal quotation omitted)

17

(citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). Liberally construing Patnaude's complaint, he alleges that there is a policy that requires that indigent inmates purchase from the commissary pain medication prescribed by a medical provider. Docket 1 at 5, 7. Because he sues the Warden of the facility where he is incarcerated and the Secretary of Corrections, he has sufficiently alleged at this stage of the proceedings that these defendants have some connection with the alleged unconstitutional conduct for which he seeks injunctive relief.

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials provide adequate medical care to inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, prisons are not required to provide this medical care irrespective of cost. "It is well established that the Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Jackson v. Dameron*, No. 7:22-CV-00090, 2025 WL 877558, at *8 (W.D. Va. Mar. 20, 2025) (internal quotations omitted) (quoting *Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012)). In *Jackson*, the court found no Eighth Amendment violation when an inmate's prescription medications were discontinued and he was informed that he could purchase over-the-counter (OTC) medication from the commissary. *Jackson*, 2025 WL 877558, at *2, *8; *see also Taylor v. Corizon Med. Servs.*, No. 1:11-CV-1436-JMS-DKL, 2013 WL 4678670, at *3, *6 (S.D. Ind. Aug. 30, 2013) (holding that prison officials did not violate an inmate's Eighth Amendment rights when his

18

prescription was discontinued and he was informed that he could buy comparable OTC medication at the commissary).

"[A] prison official violates the Eighth Amendment by refusing to provide prescribed OTC medicine for a serious medical need only if the inmate lacks sufficient resources to pay for the medicine." *Taylor*, 2013 WL 4678670, at *6 (quoting *Hudgins v. DeBruyn*, 922 F. Supp. 144, 150 (S.D. Ind. 1996)). The Eighth Circuit has recognized that inmates may be constitutionally required to pay for their own medical expenses if they can afford to do so. *Blaise v. McKinney*, 187 F.3d 640, 1999 WL 486854, at *1 (8th Cir. July 12, 1999) (per curiam) (unpublished table decision); *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999) (holding that "requiring inmates to pay for their own medications if they can afford to do so . . . is not a federal constitutional violation[]"). When considering a policy requiring inmates to pay for over-the-counter medications, one court has explained:

> The Eighth Amendment guarantees that the government will not ignore an inmate's serious medical needs; it does not guarantee free medical care. Nothing in the Eighth Amendment requires the government to provide at no cost a commodity that would not be free outside the prison and that the inmate has the legal means to purchase. If a prison official withholds necessary medical care from an inmate with a serious medical need who cannot afford to pay, the official's action would violate the inmate's constitutional rights, but insisting that an inmate with sufficient funds pay for his own medical care is neither deliberate indifference nor punishment. A prison official violates the Eighth Amendment by refusing to provide prescribed [over-the-counter] medicine for a serious medical need only if the inmate lacks sufficient resources to pay for the medicine.

*Garcia v. Lappin*, No. 06-C-94-C, 2006 WL 897857, at *3 (W.D. Wis. Apr. 4, 2006) (alteration in original) (citation modified).

By a thin margin, Patnaude has sufficiently alleged that he lacks sufficient resources to pay for his prescribed over-the-counter medication. Docket 1 at 5, 7; Docket 2 ¶ 9. Whether he will be able to come forward with admissible evidence establishing that he was in fact prescribed over-the-counter medication for a serious medical need but cannot afford to purchase the medication because he is indigent and cannot work in any capacity remains to be seen. *See* Docket 1-1 at 1, 4, 6–7. Patnaude's Eighth Amendment deliberate indifference claim for injunctive relief against Lamb and Reyes in their official capacities survives 1915A screening.

### III.    Conclusion

For the reasons discussed above, it is ORDERED:

1.    That Patnaude's motion for leave to proceed in forma pauperis, Docket 2, is granted.

2.    That the Clerk of Court shall send a copy of this order to the appropriate financial official at Patnaude's institution.

3.    That the institution having custody of Patnaude is directed that whenever the amount in Patnaude's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Patnaude's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

4.  That Nick Lamb, the current Secretary of Corrections, is substituted for Kellie Wasko, the former Secretary of Corrections, on the official capacity claims under Federal Rule of Civil Procedure 25(d).

5.  That Patnaude's claims seeking to enforce the settlement agreement between the United States Department of Justice and the SDDOC are dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6.  That Patnaude's claims against Wasko and Reyes in their individual capacities for violating the ADA are dismissed with prejudice for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7.  That Patnaude's ADA claim against the SDDOC is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

8.  That Patnaude's ADA claim seeking injunctive relief against Lamb and Reyes in their official capacities arising out of the alleged failure to award EDCs is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

9.  That Patnaude's ADA claim seeking injunctive relief against Lamb and Reyes in their official capacities arising out of the alleged failure to provide over-the-counter pain medication is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

21

10.   That Patnaude's claim arising out of the alleged violation of 28 C.F.R. § 35.107(b) is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted.

11.   That Patnaude's § 1983 claim against the SDDOC is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief can be granted

12.   That Patnaude's § 1983 claim against Wasko and Reyes in their individual capacities for injunctive relief is dismissed with prejudice for failure to state a claim upon which relief can be granted.

13.   That Patnaude's Eighth Amendment deliberate indifference claim for injunctive relief against Lamb and Reyes in their official capacities survives 1915A screening.

14.   That the Clerk shall send two blank summons forms and Marshal Service Forms (Form USM-285) to Patnaude so that he may cause the complaint to be served upon defendants Lamb and Reyes.

15.   That Patnaude shall complete and send the Clerk of Courts a summons and USM-285 form for each defendant. Upon receipt of the completed summonses and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summonses and USM-285 forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute.

22

16. That the United States Marshal Service shall serve the completed summonses, together with a copy of the complaint (Dockets 1, 1-1) and this order, upon the defendants.

17. That the defendants will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service.

18. That Patnaude will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending

Dated May 19, 2026

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

23